E-FILED
Friday, 09 October, 2026 01:01:47 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| **OTIS RAY MAYS,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 1:26-cv-1177** |
| **DANIEL SPROUL, Warden of FCI Marion,[1]** | ) | |
| **Respondent.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Petitioner Otis Ray Mays' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). For the reasons below, the Court DISMISSES Petitioner's Petition for failure to exhaust administrative remedies and/or because his claims are without merit.

## I. FACTUAL BACKGROUND[2]

Mays is serving a 132-month federal imprisonment sentence imposed by the District Court for the District of Minnesota. His current projected release date is October 23, 2028. *See* Find an inmate, https://www.bop.gov/inmateloc/ (Reg. No. 21955-041)

[1] Petitioner has been transferred to FCI Marion, in Marion, Illinois. Accordingly, the Court substitutes the warden of that facility, Daniel Sproul as respondent. *See* Fed. R. Civ. P. 25(d).

[2] Unless otherwise noted, the facts are taken from Respondent's brief (Doc. 28). *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.").

(last visited Oct. 9, 2026). Mays is challenging three disciplinary proceedings that occurred while incarcerated at FCI Lewisburg.

### A. Disciplinary Proceedings for Threatening Bodily Harm and Counterfeiting a Document (Incident Report No. 3985899)

Mays' first challenged disciplinary proceeding began when prison staff were alerted to a fraudulent malpractice lawsuit, which had been addressed to the Federal District Court for the District of Minnesota. The lawsuit named two plaintiffs: another inmate at USP Lewisburg and that inmate's girlfriend. The named defendants were Chris Harrison (an alias Mays used when he pretended he practiced law, conduct which was related to his federal convictions), Bernard Holmes (Mays' uncle and an actual attorney), and a paralegal. The malpractice suit claimed that the plaintiffs retained Harrison and paid him $32,500 for work he never performed. The suit sought $32,500 in compensatory damages plus $50,000 pain and suffering. When prison staff were alerted to the fraudulent lawsuit, they placed Mays into the Special Housing Unit (SHU) pending an investigation.

During the investigation, the inmate who was named as a plaintiff in the fraudulent lawsuit was interviewed and admitted that the allegations in the complaint were false. He admitted to handwriting the complaint, but claimed he did so at Mays' instruction. He also said that Mays was always talking about making "easy" money and Mays said that if he recovered any money from the lawsuit he would share some with him. Additionally, the inmate reported that "the other day when he was going out to the rec yard," Mays told him "he was going to get [him] because he got locked up in SHU."

Mays was also interviewed during the investigation of the lawsuit. The investigator reported that Mays said he "pleaded the fifth" when asked about the defendants named in the lawsuit and said "If [the other inmate] is the reason I am locked up in SHU, I will beat his ass when I get out." Mays also said he often did legal work with the other inmate in the law library.

Prison staff then prepared an incident report that charged Mays with abuse of the mail (prohibited act code 196) and counterfeiting or forging a document (prohibited act code 314) in relation to the fraudulent lawsuit. It also charged Mays with threatening bodily harm (prohibited act code 203) based on the threats he made during the investigation. The report was delivered to Mays on August 29, 2024. The Unit Discipline Committee (UDC) referred it for a hearing before the Disciplinary Hearing Officer (DHO). On September 1, 2024, Mays signed a written acknowledgment of his rights, requested a staff representative, and identified three witnesses. Mays said these inmates could testify that he never made any threats. The disciplinary hearing initially began on September 10, 2024, but it was deferred due to a request for witnesses. After the initial hearing, the incident report was also amended to correct the date that Mays was first placed in SHU.

Mays received the final version of the incident report on September 12, 2024. This report included the other inmate's statements about how he prepared the lawsuit at Mays' direction and his claim that Mays threatened him. It also included Mays' reported threatening statements made to staff about the other inmate during the investigation. The

UDC again referred the matter for a hearing. On September 16, 2024, Mays was provided notice of the hearing and a written advisement of his rights.

The DHO hearing occurred on September 23, 2025. Mays confirmed that he understood his rights and was ready to proceed. Mays confirmed he had spoken to his staff representative and had made no specific requests or complaints of procedural error. Mays did not present documentary evidence during the hearing, but he did request review of the video of the recreation yard to show that he and the other inmate spoke while he was in SHU. The DHO denied that request as irrelevant because the footage would not have had any audio. (Doc. 20-1 at 9).

Mays testified on his own behalf and denied any involvement in the fraudulent lawsuit and denied threatening the other inmate. With regard to the lawsuit, he testified that the other inmate and him did legal work together, so the other inmate was familiar with his criminal case. Mays theorized that the other inmate may have prepared the lawsuit on his own to obtain money from him or in retaliation for an argument they had in early July 2024. Mays also requested seven inmate witnesses: Two provided written statements, but could not be present. Four inmates denied any relevant knowledge, so were not called. Finally, Mays wanted to call the other inmate as a witness. However, the DHO concluded that the other inmate was an adverse witness whose knowledge of the incident was already adequately summarized in the incident report.

Following the hearing, the DHO issued his findings in a written report on October 7, 2024. (Doc. 20-1 at 5–9). The DHO found that the "case essentially involves weighing the credibility of the statements, testimony, and evidence presented by one inmate

against the credibility of the statements, testimony, and evidence presented by another inmate." *Id.* The DHO found that absent Mays' involvement, the other inmate did not have a motive to file the fraudulent complaint and Mays' alleged motives for other inmate were not credible or substantiated. *Id*. The DHO found that the "greater weight of the evidence" supported a finding that Mays violated Code 314A (Counterfeiting Any Document (Aiding and Abetting)), but did not substantiate Code 196 (Abuse of the Mail). *Id.* at 9. Further, the DHO found it credible that Mays made a threat when he stated during his interview with an officer that "if he [D.A.] is the reason I am locked up in SHU, I will beat his ass when I get out." *Id*. This statement is what the DHO found substantiated the Code 203 violation (Threatening Bodily Harm). *Id*.

For sanctions, the DHO disallowed 27 days of good conduct time and imposed 30 days of disciplinary segregation for Mays' threats of bodily harm (code 203), finding that those sanctions were necessary to punish and deter that conduct and to maintain the safety, security, and good order of the institution. *Id.* Mays did not lose good conduct time related to the counterfeit document violation (code 314A), but the DHO did sanction him with six months' loss of commissary, emailing, and visiting privileges. *Id*.

The DHO personally delivered the report to Mays on October 7, 2024, at 11:30 a.m. The report advised Mays (as he had also been advised before the hearing) that he had the "right to appeal this action within 20 calendar days under the Administrative Remedy Procedure." (Doc. 20-1 at 10). Accordingly, an appeal would have been due by October 27, 2024.

BOP regulations lay out the process a prisoner must follow to appeal sanctions imposed by a DHO. 28 C.F.R. §§ 542.10–542.18. First, Mays needed to appeal directly to the applicable Regional Director. *See* 28 C.F.R. § 542.14(d)(2). The record shows that Mays was informed of that requirement during the disciplinary process. *See* Doc. 20-1 at 10, 16, 30. Next, if the inmate is not satisfied with the Regional response, he may file a final appeal to the Central Office. *See* 28 C.F.R. § 542.15(a).

Mays neither promptly filed an administrative appeal, nor did he complete the administrative remedy process. Mays did not attempt to appeal the DHO decision until January 2025, at which time he filed a Request for Administrative Remedy to his institution instead of the Regional Director. The remedy was rejected and returned to Mays on January 21, 2025, along with an explanation that the request was both untimely and submitted to the wrong office. Mays then submitted an appeal to the Central Office, which received the appeal on February 7, 2025. The Central Office rejected that appeal on February 11, 2025, explaining that Mays had again submitted his appeal to the wrong level, and that he also failed to attach a copy of the DHO report or identify the action he was appealing.

On March 5, 2025, Mays finally submitted an appeal to the proper level, the Regional Director. However, the appeal was rejected as procedurally deficient on March 6, 2025. In addition to being untimely, the rejection notice explained that Mays did not provide a copy of the DHO report or otherwise identify the action he was appealing. The rejection notice advised him he could resubmit the appeal within 10 days along with verification as to why the late filing was not his fault and with proper identification of

the challenged action. Mays did not do so. Instead, he submitted an appeal to the Central Office, which was not received until August 4, 2025. The Central Office rejected the appeal, explained that it concurred with the rationale of the Regional Director, and instructed Mays to follow the directions in prior rejection notices.

### B. Disciplinary Proceedings for Threatening Bodily Harm Against Cellmate (Incident Report No. 3991448)

Mays' second challenged disciplinary proceeding involved additional threats he made towards his cellmate on September 5, 2024. On this date, while Mays was arriving at a Health Services Exam Room, Mays threatened to kill his cellmate if he was placed back in a cell with him. Specifically, the officer escorting him stated that Mays said "I will fucking kill my cellie if you put me back in my cell" and "Put me back in there and I will fucking kill him." (Doc. 20-2 at 8). Mays ignored multiple requests to stop making threats, so the officer placed him in a basement holding cell. Mays then threatened to kill the officer as well. The officer completed an incident report for the code violations of threatening bodily harm (code 203) and refusing to obey an order (code 307). Mays was given a copy of the incident report.

Later the same day, a lieutenant investigated the alleged violations. Mays was advised of his rights and acknowledged he understood them. He was also given a copy of the incident report and given an opportunity to request witnesses. He initially stated he was not requesting any witnesses. The lieutenant found that Mays had been properly charged and forwarded the report to the UDC, which in turn referred the charges to the DHO for a hearing.

The DHO tried to conduct a hearing on September 10, 2024, but Mays claimed he had not received the incident report at issue. Accordingly, the DHO delayed the hearing and reviewed the report with him. Mays then identified five witnesses he wanted called. The DHO contacted the witnesses. Two witnesses indicated that they were not present during the incident. One witness was a doctor and submitted a contemporaneous Clinical Encounter Administrative Note, which had documented Mays' threatening statements. The hearing officer determined that the doctor and the remaining two witnesses, both lieutenants who corroborated Mays' threats, were adverse witnesses whose knowledge of the incident was reflected in the written record. The DHO also contacted the UDC Chairperson, who confirmed that Mays had previously acknowledged receiving a copy of the incident report.

On September 23, 2024, the DHO then conducted the hearing after confirming that Mays understood his rights. Mays testified on his own behalf at the hearing and denied that he made the statements as written in the incident report. He admitted, however, that he did say that "if you put me back into that cell with him . . . things are going to get violent. It's going to end in violence." The DHO considered this testimony, along with the incident report, emails, the Clinical Encounter Administrative Note from the doctor, and memoranda provided by two lieutenants Mays had identified as witnesses. Based on this evidence, the DHO found that Mays committed the violation of threatening bodily harm (Code 203). The DHO found both that Mays denials were not believable and that even the statement he admitted making was sufficient to sustain the violation. Accordingly, the DHO sanctioned Mays with a loss of 27 days of good conduct time,

disciplinary segregation for 30 days, a loss of phone privileges for four months, and a loss of commissary privileges for four months.

Mays received the DHO report on October 10, 2024, and was again notified of his right to appeal within 20 days. As before, did not file a timely appeal. Mays filed appeals to his institution and the Central Office on January 21, 2024, and February 7, 2024, which were rejected as untimely and for being submitted to the wrong level. On March 5, 2025, Mays finally submitted appeals to the Regional Director. But, the appeals were rejected as deficient in multiple respects, including that they lacked an explanation for their untimeliness and that they addressed multiple matters without identifying the proceeding being appealed. On March 31, 2025, and May 28, 2025, Mays submitted two more regional appeals, which were also rejected as procedurally deficient and untimely. Mays did not attempt to cure the defects, and instead submitted appeals to the Central Office on August 4, 2025. Those appeals were likewise rejected as procedurally deficient and because Mays had not properly exhausted at the regional level.

**C. Disciplinary Proceedings for Possessing Weapons (Incident Report No. 4007211)**

Mays' third challenged disciplinary proceeding began with a search of his cell on October 7, 2024. A FCI Lewisburg Officer conducted a random search of the cell that housed Mays and one other inmate. The officer found four altered razorblades inside bound legal documents for Mays' criminal appeal, which was described as a "legal book." (Doc. 20-3 at 7). Inmates in the SHU—where Mays was located—were not permitted to have razorblades. The officer wrote an incident report for the code violation of possession

of a dangerous weapon (Code 104), and noted that he found the razorblades in Mays' book. The officer updated the incident report a few minutes after he wrote it to specify that the book in which he found the razorblades was a legal book that had Mays' name on it. Mays was provided with a copy of the incident report on October 14, 2024.

Later on October 14, 2024, a lieutenant conducted an investigation of the allegations in the incident report. During the investigation, Mays was advised of his rights and acknowledged he understood them. He was also given a copy of the incident report, and declined to request any witnesses. The lieutenant determined that the evidence supported the violations identified in incident report and forwarded the incident report to the UDC. On October 16, 2024, the UDC referred the charges to the DHO.

The DHO held a hearing on October 30, 2024. Before the hearing, the DHO confirmed that Mays understood his rights. Mays requested and received a staff representative. Mays also identified three witnesses. Two of the witnesses—an officer and a lieutenant—were not called to provide in-person testimony because the DHO concluded that they were both adverse witnesses whose knowledge was already reflected in the evidentiary record. The third witness, Mays' cellmate, testified in-person and claimed that the razorblades were his, he had gotten them from two other inmates, and he had put them in Mays' Almanac. (Doc. 20-3 at 3–4). Mays also testified on his own behalf and claimed that the search was not random. *Id*. at 3. He said that after the search the officers showed him an almanac and asked it if was his and he told them "my cellie got it off the book cart. I don't own an Alamac." *Id.*

DHO concluded Mays had violated Code 104 after considering this testimony, as well as photographs, video, the incident report, and the chain of custody form prepared for the confiscated razorblades. The DHO imposed a sanction of loss of 41 days of good conduct time, forfeiture of 41 days of non-vested good time conduct, disciplinary segregation for 60 days, loss of visiting privileges for six months, and a loss of commissary privileges for six months.

As in his other disciplinary proceedings, Mays was notified of his right to appeal the determination within 20 days under the Administrative Remedy Procedure, 28 C.F.R. §§ 542.10 et seq. Mays waited until April 2, 2025, to submit an appeal to the Regional Director using form BP-10. Mays was told he could resubmit a proper BP-10 that included a memorandum verifying that the untimely submission was not Mays' fault within 10 days of the rejection notice. Instead, Mays filed another appeal to the Regional Director after this 10-day period elapsed and without a staff memorandum regarding the initial delay. This appeal was denied on June 2, 2025. Mays then attempted to file an appeal with the Central Office, which was rejected on August 12, 2025 because he had not properly exhausted at the regional level before filing.

**D. Federal Habeas Petitions**

Mays filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on August 18, 2025, in the Southern District of New York, where he was then incarcerated. (Doc. 1). With regards to his first challenged disciplinary proceeding (Incident Report No. 3985899), Mays argues the incident report contained mistakes and did not contain enough details for him to mount a defense, and that he should have been able to question the

other inmate and ask him questions. (Doc. 1 at 90–92). With regards to his second challenged disciplinary proceeding (Incident Report No. 3991448), Mays argues that he was not given a copy of the charges, which prevented him from mounting a defense (*id.* at 64–66), explains why his threats of violence were justified (*id.* at 67–68), and claims he was denied a staff representative (*id.* at 70). Finally, in his third challenged disciplinary proceeding (Incident Report No. 4007211), Mays argues that he was prevented from calling witnesses (*id.* 38–39), and denied due process when prison staff did not give live testimony and he was not allowed to ask them questions (*id.* at 40).

Respondent filed a response in January 2026. By that time Mays had been transferred to FCI Pekin, in Pekin, Illinois, which is in the territorial jurisdiction of this district. Respondent requested that the petition be transferred to this district or be dismissed for failure to exhaust administrative remedies or on the merits. Mays consented to the transfer. (Doc. 23). Accordingly, the Southern District of New York ordered the case transferred here. Respondent was permitted to file additional briefing given the change of jurisdiction, which it did on August 14, 2026. (Doc. 28). As before, Respondent argued that Mays' claims should be dismissed for failure to exhaust administrative remedies or on the merits. Mays was also permitted to file a reply, but has not filed a timely reply.

## II. DISCUSSION

### A. Mays Failed to Exhaust his Administrative Remedies.

Habeas corpus petitions under 28 U.S.C. § 2241 have no express exhaustion requirements, but "[a] common-law exhaustion rule applies." *Richmond v. Scibana*, 387

F.3d 602, 604 (7th Cir. 2004). Courts generally review a claim by a federal prisoner challenging their sentence computation by the BOP only after they exhaust the BOP's administrative remedy process. *Antonelli v. Gilkey*, 191 F.3d 455 (7th Cir. 1999) ("Though the text of § 2241 does not explicitly require exhaustion, we have determined that in order to be eligible for habeas relief, a federal prisoner generally must exhaust any available administrative remedies."); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) ("[W]e review a claim concerning the computation of a sentence only after administrative remedies have been exhausted."). The exhaustion requirement accomplishes two important policy objectives: protection of the agency's authority and promotion of judicial economy. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006).

Since exhaustion is not mandated by statute, "sound judicial discretion governs." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004), citing *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). The Seventh Circuit has found that the general exhaustion rule may be excused when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez*, 355 F.3d at 1016, citing *Iddir v. INS,* 301 F.3d 492, 498 (7th Cir. 2002).

The BOP has an administrative remedy program available to inmates. *See* 28 C.F.R. §§ 542.10–542.18. DHO appeals are required to be submitted first to the Regional Director for the region the inmate is currently located. *Id*. § 542.14(d)(2). The inmate may submit

an appeal to the appropriate BOP Regional Director within twenty days. *Id*. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the BOP General Counsel within thirty days. *Id*. An inmate has exhausted the administrative process—and may proceed to court—after receiving a response from the General Counsel or after the passage of twenty days from appealing to the General Counsel. *Id*. § 542.18.

Mays was informed of the administrative remedy requirements in each of his disciplinary proceedings, but failed to timely file an appeal in any of his proceedings. When he did finally file appeals, he initially began filing appeals with his institution instead of the Regional Director. After he was alerted to his error, he next went to the Central Office. Finally, Mays submitted appeals to the proper level—the Regional Director—in each of his cases in March or April of 2025. However, after being told he needed to provide an explanation for their untimeliness, he failed to do so.

To the extent Mays now argues that the administrative remedy process was unavailable to him while he was at FCI Lewisburg, this argument is insufficient to excuse his exhaustion. The record shows he had the opportunity to explain his reasons for not timely filing his appeal to the Regional Director and declined to do so. And, any claim that the process was unavailable to him after leaving FCI Lewisburg is refuted by the fact that he did file appeals, but simply failed to correct the errors in his filings when given the opportunity. Accordingly, the Court dismisses his petition for failure to exhaust his administrative remedies.

**B. Mays Due Process Claims Are Meritless.**

Even if Mays had exhausted his claims, he has not shown that his disciplinary proceedings violated his due process rights. Challenges to the denial of good conduct time, are properly brought in a § 2241 petition. *Waletzki v. Keohane*, 13 F.3d 1079, 1081 (7th Cir. 1994). Federal prisoners have a statutory right to good conduct time and the loss of such credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 448 (1985); *see also Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). Due process requires that prison administrators cannot revoke good time credits without "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (*citing Wolff,* 418 U.S. at 563-67). Further, the findings must be made by an impartial decisionmaker, *Wolff*, 418 U.S. at 570–71, and "supported by some evidence in the record." *Hill*, 472 U.S. at 454–55. The three disciplinary proceedings Mays challenges all complied with these due process requirements.

**1. Disciplinary Proceedings for Threatening Bodily Harm and Counterfeiting a Document (Incident Report No. 3985899)**

In his first challenged disciplinary proceeding, Mays challenges two disciplinary violations that were addressed in one proceeding. While disciplinary proceedings that result in a loss of good conduct time invoke due process rights and are properly brought

in a habeas petition, disciplinary proceedings that only result in a loss of privileges are not. Importantly, only one violation, threatening bodily harm in violation of Code 203, led to loss of good time credits. Many of Mays' challenges to relate to the DHO's decision and the availability of witnesses for the counterfeit document violation (code 314A), for which he did not lose good conduct time. These claims are not cognizable in this proceeding.

Moreover, Mays' claims regarding the threatening bodily harm in violation of Code 203 are without merit. Mays claims that the report did not provide the exact time and date of the alleged threat, so he was not able to prepare a defense. The requirement of advanced notice "is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564. Mays was provided notice on September 12, 2024. With regards to the threats, it specified that the other inmate "was interviewed on August 7, 2024," and the inmate said during that interview, "[Mays] told me the other day when I was going out to the rec yard, he was going to get me because he got locked up in SHU." (Doc. 20-1 at 11). Since Mays was placed in the SHI on July 18, 2024, he was aware of the general timeframe of the allegation. Moreover, the report stated that Mays repeated that threat during his interview with the reporting officer. Mays would have personal knowledge of when the interview occurred even if not included in the notice. The Court finds that the notice complied with due process.

Mays also argues his due process rights were violated when he was not allowed to call the other inmate and ask him questions about his interview statements. However,

cross-examination of adverse witnesses is not a due process requirement during prison disciplinary proceedings. *Wolff*, 418 U.S. at 568 (finding cross-examination and confrontation rights are not "universally applicable to all hearings" and noting "[i]f confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls"); *see also* 28 C.F.R. § 541.8(f)(2) (instructing that a hearing offer "need not call witnesses adverse to [an inmate] if their testimony is adequately summarized in the incident report[.]"). The DHO in Mays' disciplinary hearing found that the other inmate was an adverse witness and that his testimony was already summarized in the incident report. Mays was not entitled to call him as a witness and confront him.

Mays also attempts to reargue the evidence supporting the DHO's decision. (Doc. 1 at 90–91). However, disciplinary decisions need only be "supported by some evidence in the record." *Hill*, 472 U.S. at 454–55. "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* (internal quotations omitted). An examination of the entire record is not required, nor should the court independently weight the evidence or attempt to determine the credibility of witnesses. *Id.* Instead, the Court needs only to determine if "there is any evidence in the record that could support" the decision, such that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* Only a modicum of evidence is needed under this lenient standard. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000), *cert. denied*, 531 U.S. 999 (2000). While Mays denies

making threats, the claims of the other inmate and officer are more than sufficient to satisfy the lenient standard here. Accordingly, Mays has not shown any due process violations with regard to his first disciplinary proceeding.

**2. Disciplinary Proceedings for Threatening Bodily Harm Against Cellmate (Incident Report No 3991448)**

Mays' second challenged disciplinary proceeding also complied with due process. Mays argues that he was not given a copy of the charges, which prevented him from mounting a defense. He argues he would have otherwise called witnesses and requested evidence. (Doc. 1 at 64–66). However, Mays' claim is refuted by the record. When the DHO tried to conduct a hearing on September 10, 2024, Mays also claimed he had not received the incident report. At that time, the DHO specifically reviewed the report with him and Mays *did* request witnesses. Moreover, the DHO reported that he contacted the UDC Chairperson, who confirmed that Mays had previously acknowledged receiving a copy of the incident report. And, even if Mays did not receive the incident report before the DHO reviewed it with him on September 10, 2024, he had ample time to prepare any defense prior to the actual DHO hearing date on September 23, 2024.

Mays also argues that his due process rights were violated when he was not able to call witnesses. Notably, the witnesses Mays says he wanted to call were to support his claims that his threats against his cellmate were justified based on his cellmates conduct. *See, e.g.,* doc. 1 at 67–68. However, whether a threat was "justified" is not relevant to whether Mays committed the violation of threatening bodily harm (Code 203). Mays admitted to saying that "if you put me back into that cell with him . . . things are going to

get violent. It's going to end in violence," which the DHO found was sufficient to support the charge. Mays also complains that he was not able to cross-examine the witnesses. But, as explained above, due process does not require an opportunity to confront and cross-examine witnesses during disciplinary proceedings. *See Wolff*, 418 U.S. at 568.

Finally, Mays alleges his due process rights were violated when he did not receive a staff representative. (Doc. 1 at 70). "Due process d[oes] not require that the prisoner be appointed a lay advocate, unless 'an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570). Assuming Mays' allegation that he was denied a staff representative is true, Mays has not shown that he had a constitutional right to be appointed a staff representative. The issues were neither overly complex, nor is Mays illiterate or otherwise unable to assist in his own defense. Accordingly, the Court finds that Mays has not shown any due process violations occurred during these disciplinary proceedings either.

**3. Disciplinary Proceedings for Possessing Weapons (Incident Report No. 4007211)**

Finally, Mays argues that he was prevented from calling witnesses and denied the opportunity to ask witnesses questions during his last disciplinary proceeding for possessing weapons. Mays appears to argue that he should have been able to call his cellmate, but the record shows that his cellmate was called. The DHO simply found Mays and his cellmate's story that the razorblades belonged to the cellmate and not Mays to be

unbelievable. (Doc. 20-3 at 8). Mays also wanted other witnesses to testify. (Doc. 38–39). Mays claims some of these witnesses would have helped prove that the cell searches were not random. *Id.* However, whether the cell search was random is not relevant to whether Mays possessed weapons and committed the alleged code violation. While Mays also claims one of the witnesses would have said that Mays' cellmate said that the razorblades were his, Mays' cellmate himself testified and stated this at the hearing. Mays' due process rights were not violated when irrelevant and/or cumulative testimony was not given at the DHO hearing.

Finally, Mays argues that he should have been allowed to cross-examine the officers at this proceeding. (Doc. 1 at 40). However, again, due process does not require an opportunity to confront and cross-examine witnesses during disciplinary proceedings. *See Wolff*, 418 U.S. at 568. Accordingly, Mays has not shown any due process violations with regards to this third disciplinary proceeding.

## III. CONCLUSION

For the reasons above, the Court DENIES Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1). The Clerk is DIRECTED to substitute Daniel Sproul, Warden of FCI Marion, as Respondent. The Clerk is FURTHER DIRECTED to issue the judgment in favor of Respondent and CLOSE the case.

Signed on this 9th day of October 2026.

/s/ Colleen R. Lawless
Colleen R. Lawless
United States District Judge